MRS. E. T. HOWARD v. E. T. HOWARD.

(Filed 1 April, 1931.)

1. **States A a—Where suit is brought in this State to recover for negligent injury occurring in another state the laws of the other state control.**

    While a transitory cause of action may be maintained in the courts of a State other than the one in which it occurred, the *lex loci* is that of the State wherein the injury was inflicted, to be determined as a matter of law by the courts of the State wherein the action is brought by proper service on the defendant.

2. **Same—Right of wife to sue husband in this State for negligent injury inflicted in another state is controlled by laws of that state.**

    The right of a wife to maintain a transitory action against her husband to recover damages alleged to have been caused by his negligent act depends upon the laws of the State wherein the injury was alleged to have been negligently inflicted on her by him.

3. **Same—Common law will be presumed to be in force in foreign jurisdiction unless its statutes and decisions to contrary are offered in evidence.**

    Where the wife brings an action in this State to recover damages against her husband for negligent personal injury inflicted in another State, the common law will be presumed to exist in the foreign jurisdiction unless it is made to appear in evidence that it has been changed by statute.

4. **Same—Law of the forum governs as to matters affecting remedy, rules of evidence, and burden of proof.**

    The law of the forum governs in transitory actions as to matters affecting the remedy, the rules of evidence, the burden of proof, and exceptions within the scope of private international law.

5. **Evidence I a—Where laws of another state are material they may be proven by its authorized statutes and reports.**

    The law of another State may be proven in transitory actions brought in the courts of this State by witnesses learned in the law of such other State, and by its authorized statutes and reports of decisions of its courts of last resort, and when properly offered in evidence they must be interpreted by our courts as matters of law. C. S., 1749.

6. **States A a—Laws of another state must be pleaded and proven when relied on in an action in courts of this State.**

In order to recover in a transitory action under the laws of the State wherein the cause of action arose the laws of that State must be pleaded as well as proven, and the courts of this State will not take judicial notice thereof.

7. **Same—Laws of State of New Jersey governing this action held not to allow married woman to bring action in tort against husband.**

*Held,* in this action on a transitory cause of action brought in this State wherein the wife seeks to recover damages against her husband for an alleged negligent personal injury inflicted on her while traveling in an automobile with him in the State of New Jersey the statutes of that State relating to her separate property rights and the decisions of its courts introduced in evidence do not confer authority on her to maintain an action in tort against her husband.

8. **Same—Administering law of state not allowing wife to maintain action in tort against husband is not against public policy of this State.**

Under the common law a wife could not maintain an action in tort against her husband, and where the laws of another State applying this rule control in an action brought here, the recognition of its laws does not contradict any rule of public policy in our own State, although under our statutes such action could be maintained, nor does it result in any injustice to the citizens of this State, and such laws will be applied.

APPEAL by plaintiff from *Midyette, J.,* at November Term, 1930, of HALIFAX. At the conclusion of the evidence the court dismissed the action as in case of nonsuit. The plaintiff excepted and appealed. Affirmed.

This is an action to recover damages for personal injury caused by the alleged negligence of the defendant. The material facts as related by the plaintiff, who is the defendant's wife, are substantially as follows:

In 1928-1929 the plaintiff lived in Roanoke Rapids and taught there in a public school, receiving $1,320 as her compensation for the scholastic year. In the summer of 1929 the defendant attended a summer school in Madison, Wisconsin, and in August he met the plaintiff in Toronto, Canada, for their return by automobile to Roanoke Rapids. The defendant owned the car. The first night they stopped at Olean, N. Y., and on the second day they ate supper at Scranton, Pa. Just before dark they left Scranton and arrived at Dover, N. J., about midnight. The defendant was driving about 40 miles an hour in the residential section of Dover on a paved street in which there were streetcar tracks. A New York-Buffalo bus was in front of his car. He drove down the hill around a sharp curve at the rate of about forty miles an hour. He applied the brakes and struck the car line. The sedan skidded against an electric-light pole and the plaintiff was seri-

ously injured; her nose and her jawbone were broken and her "whole face was a solid bruise." She suffered other injuries and was one week in a hospital in Dover. She had no control over the operation of his car. There was evidence in corroboration.

*Parker & Allsbrook for plaintiff.*
*George C. Green for defendant.*

ADAMS, J. The suit is in tort, the accident occurred in New Jersey, and the defendant has pleaded the laws of that State in bar of recovery.

The actionable quality of the defendant's conduct in inflicting injury upon the plaintiff must be determined by the law of the place where the injury was done; that is, the measure of the defendant's duty and his liability for negligence must be determined by the law of New Jersey. Goodrich on Conflict of Laws, 188; *Hancock v. Telegraph Co.,* 142 N. C., 163; *Harrison v. R. R.,* 168 N. C., 382; *Hipps v. R. R.,* 177 N. C., 472; *Smith v. So. Ry.,* 69 S. E. (S. C.), 18. If an act does not give rise to a cause of action where it is committed the general rule is that the party who commits the act will not be liable elsewhere, and in such event it is immaterial that a cause of action would have arisen if the wrong had been done in the jurisdiction of the forum. Minor on Conflict of Laws, 479, sec. 194. "If under the *lex loci* there is a right of action, comity permits it to be prosecuted in another jurisdiction; but if under the *lex loci* no right of action is created or exists, then it exists nowhere, and can be prosecuted in no jurisdiction." *Pendar v. Machine Co.,* 35 R. I., 321, L. R. A., 1916A, 428. This statement of the law is generally accepted. *O'Reilly v. R. R.,* 5 L. R. A., 364; *Needham v. R. R.,* 38 Vt., 294; *Davis v. R. R.,* 143 Mass., 301; *Alexander v. Pennsylvania Co.,* 30 N. E. (Ohio), 69; *Boston & Maine Railroad v. Hurd,* 108 Fed., 116, 56 L. R. A., 193, Annotation; 5 R. C. L., 1038. Compare *Wall v. Hoskins,* 27 N. C., 177. The law of the forum governs as to matters affecting the remedy, the rules of evidence, the burden of proof, and exceptions within the scope of private international law. *So. Ry. v. Decker,* 62 S. E. (Ga.), 678; *Hill v. C. R. R., etc.,* 93 S. E. (Ga.), 1027; *Armstrong v. Best,* 112 N. C., 59.

It may be said, then, that the plaintiff's asserted right to maintain this action is dependent upon the laws of New Jersey. The action is personal, not real; and if it can be maintained in New Jersey, being transitory and not local, it may be prosecuted here, because by personal process the defendant was brought within the jurisdiction of the court. But it is otherwise if on the question presented the common law prevails in the foreign State. *Dennick v. R. R.,* 103 U. S., 11, 26 L. Ed., 439.

The law of another State with respect to a particular question may be proved, not only by witnesses learned in the laws of that State, but by statutes printed by authority thereof and by the decisions and opinions of the court of last resort. The decisions of the highest court of another State, when offered in evidence, must, of course, be interpreted by the trial court and not by the jury. So, likewise, as to statutes. C. S., 1749; *Harrison v. R. R., supra.* The unwritten or common law of another State may be proved as a fact by oral evidence, but in the absence of proof to the contrary it is to be presumed that the common law is there in force. C. S., 1749; *Lassiter v. R. R.,* 136 N. C., 89; *Miller v. R. R.,* 154 N. C., 441; 1 Chamberlayne's Law of Evidence, sec. 584, *et seq.*

To rebut the presumption that the common law prevails in New Jersey the plaintiff, subject to the defendant's exception, introduced certain statutes of that State relating to the rights of married women. The defendant's exception is addressed to the failure of the plaintiff to set forth in his complaint or to plead any of the statutes on which she relies.

The law of another State is as much a "question of law" as is the law of our own State. Our courts are presumed to have judicial knowledge of our public laws but not the laws of other states. We do not take judicial notice of the statutes of another State. Foreign laws and statutes must be pleaded and proved as a fact. *Hooper v. Moore,* 50 N. C., 130; *Lassiter v. R. R., supra; Hall v. R. R.,* 146 N. C., 345; McIntosh's Practice and Procedure, 355. By amendment to the complaint the plaintiff alleged that the laws of the State of New Jersey permit a wife to sue her husband for tort, as if she were unmarried.

Waiving any objection to the sufficiency of this allegation we are of opinion that the statutes offered in evidence do not confer authority upon the plaintiff to maintain the present action. Sections 12a and 12b, pages 3236, 3237, Compiled Statutes of New Jersey, authorize a married woman to bring suit for torts committed against her person or her separate property, without joining her husband therein. These statutes obviously refer to suits, not against her husband, but against other persons, because it is further provided that his failure to join in the wife's action shall not prevent his right to maintain a separate action therefor. *Peskowitz v. Kramer,* 105 N. J. L., 415. If a husband is sued by his wife it can hardly be said that he may join in her suit for recovery against himself. The same reasoning applies to sections 124-17 and 124-18, chapter 232 of the Laws of 1912. The statutes relating to the right of married women to bind themselves by contract, or to retain as their separate property their wages, their earnings, and the property owned by them at the time of their marriage or thereafter

19—200

acquired, or to convey or devise their property, are not decisive of the question under consideration. We are likewise of opinion that the decisions of the New Jersey courts offered in evidence at the trial do not establish the right to maintain this action.

In *Laszewski v. Laszewski,* 99 N. J. Eq., 25, determined in 1926, the Court of Chancery made this statement: "Neither at law nor in equity can an action be maintained by a wife against her husband for personal injuries. In equity a bill filed by a wife against her husband may be maintained for the protection or restoration of her separate estate, but aside from certain relief in matrimonial causes, based on fraud or want of assent in the matrimonial contract, neither in England nor in this country, except by statute, has the right of a married woman to maintain an action against her husband, either at law or in equity, been extended to the protection of personal as distinguished from property rights. As to our Married Woman's Act, it is sufficient to say that in the absence of a clear manifestation of legislative intent to effect so radical a change in our long established rules in this respect, the legislative purpose should not be declared by implication. But even if deemed changed by implication, the right of action for unliquidated damages would necessarily be pursued in the courts of law."

We find no authority for saying that the law has been changed by implication, for in *Sargeant v. Fedor,* 130 At., 207, the Supreme Court of New Jersey remarked that as against the husband the common-law rule of liability is adhered to in that State.

Under the common law neither spouse could maintain an action in tort against the other. *Phillips v. Barnet,* 1 Q. B. D., 436; *Crowell v. Crowell,* 180 N. C., 516; *Roberts v. Roberts,* 185 N. C., 566. Not denying this statement of the law, the plaintiff contends by way of avoiding its present application that the undisputed facts bring her case within two of the established exceptions to the general rule—that is, that a State will not enforce a foreign law (1) where its enforcement would contravene some established and important policy of the State of the forum or (2) would involve injustice and injury to the people of the forum.

No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived. The extent to which the law of one nation shall be allowed to operate within the dominion of another nation depends upon the rule of comity; and comity is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation. *Hilton v. Guyot,* 159 U. S., 113, 163, 40 L. Ed., 95, 108. But the rule of comity is not confined to nations; it applies also to the States, whose "deep and vital interests bind them so closely together." *Bank v. Earle,* 13 Pet.,

519, 590, 10 L. Ed., 274, 309.   It is true that foreign laws will not commonly be enforced if their enforcement would run counter to the settled policy of the forum.   So, the question arising here is whether the common law as administered in New Jersey in actions of tort between wife and husband contravenes the settled public policy of this State.   The only asserted ground of contravention seems to be a difference in the law of the two states.   Under our law a wife may maintain a suit against her husband for a tortious act.   *Crowell v. Crowell, supra; Roberts v. Roberts, supra.*   But the fact that the law of two states may differ does not necessarily imply that the law of one state violates the public policy of the other.   "It by no means follows that because the statute of one State differs from the law of another State, therefore it would be held contrary to the policy of the laws of the latter State. . . .   To justify a court in refusing to enforce a right of action which accrued under the law of another State, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens." *Herrick v. R. R.,* 31 Minn., 11, 47 A. R., 771; Goodrich on Conflict of Laws, 199.   In *Loucks v. Standard Oil Co.,* 120 N. E., 198, the Court of Appeals of New York, in an opinion delivered by *Cardozo, J.,* used this language: "We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home. Similarity of legislation has indeed this importance; its presence shows beyond question that the foreign statute does not offend the local policy. But its absence does not prove the contrary.   It is not to be exalted into an indispensable condition.   The misleading word 'comity' has been responsible for much of the trouble.   It has been fertile in suggesting a discretion unregulated by general principles."

Questions relating to public policy often involve a distinction between legislation and the approval, or adoption, and enforcement of a public law.   The latter may and the former may not constitute a rule of policy.   The distinction is pointed out in *Thompson v. Taylor,* 54 L. R. A. (N. J.), 585, in the words following: "The distinction between regulative legislation and the adoption of a principle of public law is too important to lose sight of.   To declare, as the common law did, that the welfare of society required that wives be incapable of making contracts, is an illustration of the adoption of a principle which so long as it was adhered to, constituted a rule of public policy.   When, however, civilized states became satisfied that the welfare of society was not best served by the maintenance of this principle it was abandoned by the recognition of its opposite, viz., that married women possessed capacity to contract.   The questions that then arose, viz., what

contract may they make, and what may they not? while calling for the exercise of legislative discretion based upon considerations that affected a large class of individuals, did not, either in theory or in fact, involve any principle upon which the general welfare of the body of citizens of the State was assumed to rest. With the abandonment of the politi-cal principle the matter was broken up into discretionary exercises of legislative regulation in the course of which different bodies or the same legislative body at different periods, might lay down varying rules without destroying that comity that is so essential to commercial confi-dence and intercourse."

This, it seems to us, is a refutation of the contention that we should not recognize the law of New Jersey because it conflicts with principles enunciated in the cited cases of *Crowell* and *Roberts*. Application of the principle that foreign laws will not be given effect when contrary to the settled public policy of the forum is often made in a certain class of cases—such, for example, as prohibited marriages, wagers, lotteries, racing, contracts for gaming or the sale of liquor, and others. *S. v. Ross*, 76 N. C., 242; *Randolph v. Heath*, 171 N. C., 383; *Bluthenthal v. Kennedy*, 165 N. C., 372; *Gooch v. Faucett*, 122 N. C., 270.

The second objection is without merit. We do not see how the recog-nition of the New Jersey law can involve any injustice or injury to the people of North Carolina. Judgment

Affirmed.